Opinion delivered April 22, 1886.

[No. 3870.]

## TOM PAYNE *v.* THE STATE.

1. BURGLARY—CHARGE OF THE COURT.—See the opinion for a special charge of the court in a trial for burglary, *held* properly refused, as being upon the weight of evidence, however correct as a legal proposition.

2. SAME.—The defense, in a trial for burglary, requested the trial court to charge as follows: "If you believe from the evidence that the defendant, when found in possession of the clothes, failed to give a reasonable account of his possession, then you may take these facts into consideration with all the other facts and circumstances in evidence, to enable you to determine whether the defendant is guilty of burglary as charged." *Held*, that the charge was properly refused, because the fact of the defendant's recent possession of the stolen articles was evidence competent to be considered in connection with the other facts proved, whether the defendant gave a reasonable or unreasonable, or no explanation of his possession.

3. SAME—FACT—CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for burglary.

APPEAL from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

The conviction in this case was for the burglary of the house of one J. M. Phillips, in Fannin county, Texas, on the twenty-seventh day of January, 1886. A term of two years in the penitentiary was the penalty assessed by the jury.

J. M. Phillips was the first witness for the State. He testified that he lived in Fannin county, Texas, about ten miles south of Bonham, on the Bonham and Greenville road. No one lived with the witness but his son John. They occupied a log house about sixteen feet square, to which there was but one door, the same being on the south side. Between nine and ten o'clock on

the morning of January 26, 1886, the witness left home to go to the house of a neighbor on some business. He left his little son John at the house. At a point about three hundred yards north of his house the witness heard some one in the brush, and thinking such person must be one of his neighbors, he called to him. A voice responded: "You are mistaken." Witness thought he recognized the voice, and asked: "Is that you, John?" The voice replied: "No; you don't know me." Witness then caught sight of a colored boy, the defendant, and asked him what he was doing there. He said that he was scratching in a rat's nest for pecans, which, in fact. he seemed to be doing. Witness continued his journey, leaving the defendant, whom he identifies as the colored boy described, scratching at the rat's nest, a short distance off the road. Witness got back home about noon, and found his little son at the house. He then missed a suit of clothes for which he had paid eighteen or twenty dollars some twelve months before. Witness at once started in pursuit of the burglar, traveling south over the Bonham and Greenville road. He was informed by a lady at a house about three miles distant from his house, that a colored boy with some clothing in his arms passed her house on that morning. Mr. Taylor, who lived four miles beyond the lady's house, told witness that a colored boy, with some clothing hanging across his arm, passed his house a short time before. Mr. Taylor joined the witness in the pursuit. The road forked at a point about three miles beyond Taylor's house, and came together again near a creek some distance further on. Witness took one of these roads and Mr. Taylor the other. Witness traveled as far as the creek, and back over the road taken by Mr. Taylor, and found Mr. Taylor with the defendant and the clothing in custody. Taylor turned the defendant and the clothing over to witness, and continued his way toward Greenville. Witness, with the defendant, returned to his home. On the way back witness asked defendant how he came in possession of the clothes. He told witness that he traded for them with a colored boy who overtook him on the road. He said that he gave the colored boy seventy-five cents and a pocket knife for the clothing. He told witness that his father lived at or near Greenville; that he, defendant, had been at work for several months on a railway section near Bonham, and that he was on his way to his father's house. He gave his name as Tom Payne. He was unable to point out the place where he made the trade for the clothes. Witness kept

the defendant at his house all night, and took him to Bonham on the next morning. No one had the consent of the witness to enter his house and take the clothing. Witness searched the defendant but found only a few small trinkets and some bread crumbs in his pockets.

Dan Taylor testified, for the State, that he lived on the Bonham and Greenville road. The defendant, with some clothing across his arm, passed witness's house on the evening of January 26, 1886. Mr. Phillips came by shortly afterwards, and asked witness to join him in the pursuit, which witness did. He and Phillips separated at the forks of the road, taking different roads. Witness caught sight of the defendant just before he got to the creek. He was then walking slowly along the road. He looked back at the witness twice. Witness overhauled him just as he was starting to cross the creek on a log. By a misstep he slipped off the log into the mud and dropped the clothing. Witness asked defendant "what he had there?" He replied that he had "some clothes." Witness told him to hand the clothes to him, which he did. Witness examined the clothing, but found nothing in them. He searched defendant, but found nothing on his person. He made to the witness the same statement about his purchase of the clothes that he made to Phillips, and the same statement concerning his recent employment on the railroad and his then destination.

John Phillips, the nine year old son of the prosecuting witness, testified, for the State, that he left home about thirty minutes after his father did, on the morning of the burglary. He closed the one door of the house when he left, by propping it with a board, which was the way in which it was usually closed. The clothing recovered from the defendant was hanging up in the house when the witness left. Witness returned home between eleven and twelve o'clock, and found the door of the house open. He stepped off from the house, about forty yards, to stone some birds, and found his father's vest lying on the ground. When he took the vest back to the house he discovered that the coat and pants were gone. His father soon returned, and left again in pursuit of the burglar. He returned that night with the defendant and the missing clothes. When the witness left the house on that morning he left some bread in it. The bread was gone when he returned. Witness was positive that he shut the door when he left home on that morning, and knew that the

coat and pants recovered from the defendant were then in the house. The State closed.

Charles D. Grace, the defendant's first witness, testified that he knew, as a fact, that the defendant, for some time before the alleged burglary, was in the employ of the railway company on one of its sections near Bonham. Witness acted as his attorney in the collection of his wages.

Ned Payne testified, for the defense, that the defendant was his son, and for some months before the alleged burglary was at work on a railroad section near Bonham. Witness lived near Greenville, in Hunt county.

The motion for new trial raised the question discussed in the opinion.

*J. C. Baldwin* and *Taylor & Galloway,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for burglary.

In answer to the first error assigned, it is sufficient to say that the court charged all the law of burglary, the indictment charging burglary in the *day time.* There was no exception reserved to the charge, and the court applied the law to the case presented in the indictment, and by the evidence in another part of the charge. There being no error apparent, for this reason the judgment will not be reversed.

When found in possession of the goods (clothing), which was on the same day of the burglary, the defendant stated that he had been working for several months on the railroad section at Bonham; that he was at the time en route from Bonham to his father's home near Greenville, when a colored boy overtook him and proposed to sell him the clothing; that he bought the clothing, paying therefor seventy-five cents and a pocket knife. From the testimony of other witnesses it appears that, in fact, the defendant had, as he stated, been at work at Bonham for the road, and that his father did live near Greenville; that the defendant was on the public road leading from Bonham to Greenville, going in the direction of Greenville; that the house was entered in the day time; that defendant, if he was the burglar, continued to travel the public road to Greenville, and was overtaken while leisurely walking along said road with the clothes on his arm.

Under the above state of facts the counsel for defendant requested the court to give to the jury this charge: "The possession of stolen goods without other evidence of guilt is not sufficient to convict," etc. The court did right in refusing this charge. If there was no other evidence save naked possession, the court should have granted a new trial, but this charge would have been upon the weight of the evidence.

The defendant also requested the court to charge the jury that "if you believe from the evidence that defendant, when found in possession of the clothes, failed to give a reasonable account of his possession, then you may take these facts into consideration, with all the other facts and circumstances in evidence, to enable you to determine whether the defendant is guilty of burglary as charged." This charge was correctly refused, for, whether defendant gave a reasonable or unreasonable account of his possession, or whether defendant failed to give any account of his possession at all, still, the fact of his being in recent possession of the goods could and should have been considered by the jury with all the other evidence in the case.

The other error assigned is, that the verdict is not supported by the evidence. We think otherwise. If the jury believed the explanation made by defendant, they certainly would have acquitted him. But is the explanation reasonable? For a coat and pants worth about fifteen dollars, he paid seventy-five cents and a pocket knife! The purchase was from a negro boy, his name not ascertained by defendant. Now, under these circumstances the jury came to the conclusion that this was not true, and that he stole the goods.

There was another fact in the case tending to convict. Some bread was taken at the time of the burglary, and crumbs of bread were found in defendant's pocket, with no attempt at explanation on his part. Taking all the facts together, we can not say that the verdict is not supported by that evidence.

The judgment is affirmed.

*Affirmed.*